# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ALLAN MAY,
MICHELLE MAY,

                **Plaintiffs,**

-vs-                              **Case No.  6:03-cv-1832-Orl-DAB**

NYGARD HOLDINGS LIMITED, d/b/a
Nygard Cay Bahamas, d/b/a NCBR,
NYGARD INTERNATIONAL
PARTNERSHIP,
NYGARD PROPERTIES, LTD, f/k/a
Nygard International, LTD,
PETER J. NYGARD,

                **Defendants.**

_____

## MEMORANDUM OPINION AND ORDER

       This cause came on for consideration without oral argument on the following motions filed

herein:

| MOTION: | MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I AND II AND SUMMARY JUDGMENT AS TO COUNT IV (Doc. No. 148) |
|---|---|
| FILED: | July 25, 2005 |
| THEREON it is **ORDERED** that the motion is **GRANTED, in part and DENIED, in part**. | |

| MOTION: | MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS (Doc. No. 150) |
|---|---|
| FILED: | July 25, 2005 |
| THEREON it is **ORDERED** that the motion is **GRANTED** in part, and **DENIED,** in part. | |

## INTRODUCTION

The matter comes before the Court on cross-motions for summary judgment.  The procedural history of this case is fairly complex.  Plaintiffs are husband and wife and former residents of the State of Florida.  Defendant Nygard Holdings, Ltd. d/b/a Nygard Cay Bahamas resort (herein "Holdings") is a Bahamian company.  Defendant Nygard International Partnership (herein "the Partnership") is a Canadian partnership, and Defendant Peter Nygard is a Canadian citizen, residing in the Bahamas at the Resort, which is on land owned by Nygard personally, and leased by Holdings.  Plaintiffs entered into employment contracts with Holdings[1] that required Plaintiffs to relocate to the Bahamas, in order to work at the Resort.  Plaintiffs resigned after two months.  Holdings sued Plaintiffs in the Bahamas, alleging misappropriation of confidential material.  Plaintiffs then filed suit in Florida state court for breach of contract, fraud, and a declaratory judgment (Doc. No. 2).  Defendants removed to this Court (Doc. No. 1) on the basis of diversity jurisdiction.

Defendants moved to dismiss, based on lack of personal jurisdiction, and the District Court denied the motion.  The parties then consented to the jurisdiction of the undersigned magistrate judge to try the case, and renewed the motion to dismiss based on forum non conveniens, at the Court's invitation.  The undersigned denied the motion.  In the meantime, the Bahamian court entered an anti-suit injunction against Plaintiffs (Doc. No. 130-Exhibit D), purporting to restrain the Mays from pursuing this action and directing that they bring the instant claims as counterclaims to the pending

---

[1]The exact identity of Plaintiffs' employer is in dispute.  The employment agreements were signed by Ken Grondin, Chief Financial Officer of Nygard International Partnership.  In the Answer to the Amended Complaint, however, International denies that it was Plaintiffs' employer, and Holdings admits that it was the employer.  It appears that the relationship between the three Defendants was fluid, to say the least.  It is clear, however, that Holdings leased the land on which the resort is located, and the work was to be performed at the resort.  For present purposes, the Court refers to Holdings as Plaintiffs' employer.

Bahamian suit.  At status conference, the Court inquired as to what the Plaintiffs wished to do, and counsel affirmed Plaintiffs' decision to continue the instant litigation.

The parties have filed cross motions for summary judgment, supported by literally thousands of pages of exhibits, depositions, affidavits and argument.  *See* Doc. Nos. 149, 151-164, 166- 171, and all attachments thereto.  The Court has painstakingly reviewed the parties' arguments, the evidence, and the applicable law, and makes the following findings of fact and conclusions of law.

### SUMMARY JUDGMENT STANDARD

A party is entitled to judgment as a matter of law when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. Pro. 56(c).  The substantive law applicable to the case determines which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323.  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.

## MATERIAL FACTS

Plaintiffs contend that their employer, Holdings, breached their employment contract and fraudulently induced them to enter the employment contract.[2] While the parties have introduced thousands of pages as evidence, the vast majority of the testimony and exhibits, including photographs of adult-oriented materials, books about Hitler, and titillating testimony regarding sexual conquests and racist attitudes, are largely irrelevant to these claims. While some *immaterial* facts[3] are disputed, the Court finds the *material* facts are not in dispute.[4]

Holdings operates a private resort in the Bahamas, which is also the personal residence of Nygard. On or about April 2003, Plaintiffs reviewed an advertisement placed by a recruiting organization, looking for employees for the Resort. Plaintiffs submitted their resumes. In their depositions, both Plaintiffs admit to lying on their resumes.[5] (*See* Deposition of Alan May at 125-143; Deposition of Michelle May at 122-139).

---

[2]Tthe Mays cannot both repudiate the contract, and sue upon it for damages. As stated by the Florida Supreme Court:

> Consistent with the majority view, Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract. *See Deemer v. Hallett Pontiac, Inc.*, 288 So.2d 526, 528 (Fla. 3d DCA 1974).

*Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306, 313 (Fla. 2000). Based on the rulings in this Order, this issue of election is moot.

[3]Counsel are admonished for their failure to pare down the materials submitted supporting and opposing the motions. It is apparent that no effort was made to limit the evidence submitted to that which could arguably bear on the matters properly considered under Rule 56. In addition, the inclusion of indecent and scandalous matter immaterial to the issues before the Court was improper. *See* Rule 12(f), F.R. Civ. P.

[4]The Court takes the following from the parties' statements of undisputed facts. Doc. Nos. 150 and 170.

[5]The misrepresentations made by Plaintiffs were not trivial. Both Plaintiffs misrepresented their years of experience, mischaracterized their work experience, and exaggerated their salaries. Alan May also admits to misrepresenting his educational background.

Plaintiffs and Nygard met in Miami Beach to discuss employment with the Resort.  The parties dispute who said what regarding the issue of work permits; but it is not disputed that the Bahamas, by law,  requires work permits for non-citizens and, prior to accepting employment with Holdings, work permits were discussed.  Plaintiffs say that they were told that they would be covered by a "blanket work permit."  Defendant Nygard says he told Plaintiffs that Holdings would provide work permits in the normal course, later construed as upon receipt of all of the employee-provided documentation, at the conclusion of the three-month probationary period.

Plaintiffs claim that they were also told that Nygard treated his employees well and fairly; that he was in the process of converting the property to a commercial resort, and that the property was often used to host banquets, fashion shows, parties and other events typical of a "first class resort." Plaintiffs state that they were told that the prior manager and his wife had left "because they were perfectionists and were unhappy because they could not get the resort to their standards." (Doc. No. 170 at 11).

Plaintiffs were hired and entered into Employment Agreements, signed by the CFO of the Partnership, apparently on behalf of "NCBR" (Doc. No. 149, Exhibit 3).  The Agreements provided for a three month probationary period and were to be construed in accordance with Bahamian law. The Agreements also provided:

> During your Probationary Period, either party can terminate this Agreement at any time upon giving one day's notice to the other party.

The following provision was also included:

> TERMINATION.  The notice period to terminate the agreement will be one (1) month in writing by either party.  In the event you choose to terminate this agreement, NCBR [Holdings] reserves the right to accept your termination Immediately without further remuneration.  No

> "forced termination implication" would be applicable in this clause in any manner.  If you do not give the required one (1) month's notice, you will be deemed to have abandoned your employment with NCBR, In which case an "Abandonment Penalty" may be imposed.  The Abandonment Penalty will be assessed at the rate equivalent to one (1) month's salary.  Any such Abandonment Penalty will be deducted from monies owed to you prior to final payout of such monies.

Plaintiffs traveled to the Bahamas and worked for the Resort from July 8, 2003, until they resigned on August 30, 2003.  The Mays were not paid for their last eight days of work.  Work permits were not obtained for Plaintiffs.

### ANALYSIS

Defendants have again raised the defense of lack of personal jurisdiction, first raised  in their motion to dismiss (Doc. Nos. 13 and 14).   These identical arguments have already been denied by Judge Sharp (Doc. No. 13), and the Court sees no reason to revisit that ruling at this stage.[6]  The motion for summary judgment based on lack of personal jurisdiction is **denied.**

In *their* motion for partial summary judgment, which is directed only to the breach of contract counts and the count for declaratory judgment, Plaintiffs contend that upon commencing employment at the Resort, they found the circumstances of their employment to be "vastly different from that represented by Defendants." (Doc. No. 149).  Defendants move for summary judgment on all counts, contending that, as a matter of law, Defendants are not liable for any of the claims.  We treat the counts, in turn.

---

[6]To the extent Defendants imply that Plaintiffs were only required to plead jurisdiction and not prove it on a motion to dismiss (*see* Doc. No. 151 at 4 and fn. 4), they are mistaken.  Where the Court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a *prima facie* case of jurisdiction over the defendant by presenting "sufficient evidence to defeat a motion for directed verdict."  *Structural Panels v. Texas Aluminum Industries*, 814 F.Supp. 1058, 1063 (M.D. Fla. 1993) *quoting Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).  Since Judge Sharp's denial of the motion to dismiss was no doubt based on a finding that the Affidavits (evidence) were sufficient to meet that standard, and that standard is similar to a summary judgment standard, Defendants present no reason to alter that finding, due to the current posture of the case.

**The Employment Agreements (Counts I and II)**

Plaintiffs claim that Holdings breached the employment agreements by:

1.  Failing to obtain work permits for the Mays; and

2.  Failing to pay their salary ($929.00 each)  for their last eight days of work.

Asserting that "there are material issues of fact as to the amount of damages [Plaintiffs] can recover for the breach of contract," Plaintiffs nonetheless ask for a "partial summary judgment" finding breach of contract.  The Court finds that the failure to obtain work permits was not a breach of contract, but that the failure to pay the salary was a breach of contract, that there are no disputed issues as to the amount of damage, and Plaintiffs are entitled to judgment against Holdings in the total amount of $929.00 each on these counts.[7]

The Agreements provide that they are to be construed in accordance with Bahamian law. Section 2 of the Bahamas' Declaratory Act states that the Commonwealth of the Bahamas adopts and follows the common law of England unless a Bahamian statute or act provides otherwise. *See Beale v. Beale*, 807 So.2d 797, 798 (Fla. 1st DCA 2002) *citing* Martindale Hubbell Bahamas Law Digest, BHM2, 3 (2001 ed.).  Neither side has cited contrary Bahamian law, with respect to breach of contract, so the Court follows the common law.[8]

---

[7]As noted above, there are disputed issues as to which other Defendants may be liable under the contract.

[8]*See* the Affidavit of Marco M. Turnquest, an attorney and counselor at law in the Commonwealth of the Bahamas (Doc. No. 151, Exhibit E).

At common law, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 91 (11th Cir. 1999) *citing Abruzzo v. Haller,* 603 So.2d 1338, 1340 (Fla. 1st DCA 1992); accord, *Abbott Labs., Inc. v. GE Capital*, 765 So.2d 737, 740 (Fla. 5th DCA 2000).  Further, "[i]n breach of contract actions, a plaintiff may recover only if the damages were a proximate result of the breach." *Chipman v. Chonin*, 597 So.2d 363, 364 (Fla. 3d DCA 1992) (citing *Tuttle/White Constructors, Inc. v. Montgomery Elevator Co.*, 385 So.2d 98 (Fla. 5th DCA 1980)).

**Work Permits**

Plaintiffs argue at length that the duty to obtain work permits was either an express or implied part of the contract, that Bahamian law requires work permits, and that work permits were never obtained for them.  Defendants do not dispute their legal (as opposed to contractual) obligation to obtain work permits, but note that Plaintiffs did not provide the necessary documentation and that the permits were to be obtained only after conclusion of the probationary period.  While there are obviously disputed issues as to who, what and when, there are no disputes as to the *material* facts: breach of contract requires a duty, a breach, and damage resulting from the breach.  Here, a *contractual* duty is not present, and no damage was proximately caused by the breach.

The Agreements are silent with respect to work permits, and thus, no written contract provision exists.  To the extent this duty could be implied or otherwise be taken from the vague recollections of the oral negotiations, there is no evidence sufficient to find that the parties had a meeting of the minds that work permits would be provided to Plaintiffs *prior to* their arrival and employment in the Bahamas.  Indeed, the evidence indicates precisely the opposite – that Plaintiffs believed they were already covered under a "blanket" permit and Nygard believed that the permits

would be obtained after the end of the probationary period.  Moreover, as ably stated by Florida's

Fourth District Court of Appeal:

> [T]here is no recognized independent cause of action for breach of a duty to obey laws other than as may be included in the terms of a contract. *Wilcox v. Atkins*, 213 So.2d 879 (Fla. 2d DCA 1968). Other than to resolve ambiguity or to assure that a change in the law did not make it impossible for the parties to reap the anticipated benefits of their bargain, courts do not utilize this principle to alter or add to negotiated obligations defined in contracts. The exception is where the law renders the contract illegal.

*Hospital Corp. of America v. Florida Medical Center, Inc.*, 710 So.2d 573, 574-75 (Fla. 4th DCA

1998).

Thus, while Defendants may have had a legal obligation to secure the work permits prior to

Plaintiffs starting work, there is no showing that the parties had a valid contractual obligation –explicit

or implicit– that Defendants were to obtain work permits for Plaintiffs prior to Plaintiffs' employment.

Importantly, even if the Court were to credit Plaintiffs' theory that Defendants had a

contractual duty to obtain work permits, and they failed in that duty, *there is no evidence on this*

*record of any resulting damage to Plaintiffs.*  While Plaintiffs cite Bahamian law which indicates that

they *could* have been prosecuted and fined for not having a work permit, the fact remains that they

were not.[9]  Nor have Plaintiffs pointed to any other injuries they suffered as a result of not having

work permits.[10]  The claim fails for lack of proof.

---

[9]The Court will not speculate as to any reasons for the failure of the Bahamian authorities to enforce the permit requirement strictly, other than to note that most laws in most places are not applied with absolute rigor at all times.  Witness, for example, the presence of millions of undocumented aliens in the United States.

[10]In finding that the failure to obtain work permits is not a breach of contract, the Court does not mean to imply that Defendants' actions were legal or acceptable.  The Court finds only that, in the absence of express language in the Agreements requiring timely procurement of work permits, Defendants' obligation to obtain work permits is established by the law, and not the contract.

**Unpaid salary**

Unlike the work permit issue, Plaintiffs have carried their burden of showing that there is no genuine issue of material fact sufficient to preclude judgment for their unpaid salaries. There is no dispute that the Mays were not paid. Rather, Defendants rely on the termination paragraph quoted above, and contend that the failure to give one month's notice allowed them to withhold the pay. The Court rejects this argument.

The Agreements clearly provide that during the probationary period, only one day's notice was required to terminate the Agreement. The Mays terminated the Agreement in accordance with that provision, during the probationary period. Notably, the provision allowing for termination within the probationary period says nothing about an Abandonment Penalty. To the extent the termination provision requiring one month's notice is to the contrary, the Court follows the rule that a contract ambiguity is construed against the drafter. *See Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) citing *Hurt v. Leatherby Ins. Co.*, 380 So.2d 432, 434 (Fla. 1980). Similarly, errors in drafting contracts are construed against the drafter. *McGregor v. Board of Commissioners of Palm Beach County*, 956 F.2d 1017, 1022 (11th Cir. 1992). The competing provisions are susceptible to a reasonable construction and can be readily reconciled by interpreting the two provisions for terminating the Agreement as: one for terminations within the probationary period and one for terminations without the period. The Court finds that the Abandonment Penalty provision only applies to terminations outside the probationary period. As such, there is no dispute that Defendant Holdings

-10-

owes Plaintiffs $929.00 each for unpaid salary.[11]  Plaintiffs' motion is **granted,** to the extent that it seeks judgment in that amount.

### Fraudulent Inducement (Count III)

Defendants contend that Plaintiffs' fraudulent inducement claim is barred by Florida's economic loss doctrine and fails for lack of proof on the merits.  While the Court finds that the claim is not barred, it agrees that Plaintiffs have not presented a claim sufficient to withstand summary judgment on this count.

*The Economic Loss Doctrine*

As defined recently by the Florida Supreme Court, "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses.*" Indemnity Ins. Co. of North America v. American Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004).  "Although parties in privity of contract are generally prohibited from recovering in tort for economic damages," the Florida Supreme Court specifically noted that exceptions to this rule exist, such as an action for fraud in the inducement. *Id., citing HTP, Ltd. v. Lineas Aereas Costarricenses*, *S.A.*, 685 So.2d 1238, 1239 (Fla. 1996) ("Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract"). Defendants do not cite to or discuss the *Indemnity* case, and its clear reaffirmance of the inapplicability of the economic loss rule to well-pled claims of fraudulent inducement.

"This exception to the economic loss rule means that when a contract exists between two parties, a claim for fraudulent or intentional misrepresentation may also be asserted if the acts

---

[11]It appears that there a dispute remains as to whether, and in what amount, interest should be awarded.

-11-

constituting the fraudulent or negligent misrepresentation are separate from the acts that constitute the breach of contract." *Spectrum Trucking Co., Inc. v. Acordia Northwest, Inc.*, 2005 WL 1863426, *2 (M.D. Fla. July 29, 2005). As shown above, Plaintiffs claim that the contract was breached by failing to obtain work permits and failing to pay the agreed salary. By contrast, the acts alleged to constitute fraudulent inducement include the representation that work permits would be obtained *and* representations regarding Nygard's treatment of the employees of the Resort; representations that the Resort had activities in keeping with a first class Resort; representations that Nygard was converting the property to a commercial resort; and representations regarding the reasons the prior managers left. The fraudulent representation claim is not just based on the work permit issue, but on several alleged acts, separate and apart from the two asserted breaches of contract. The claim is not barred by the economic loss rule.

### Choice of Law

The parties differ as to whether Florida law or Bahamian law applies to this claim. According to the Affidavit of Marco Turnquest, an attorney practicing in the Bahamas, under Bahamian law:

> fraud is proved by showing that a false representation has been made by a defendant knowingly; without belief in its truth; or recklessly, not caring or carelessly whether it be true or false. . . . In addition, a claim for fraud under Bahamian law requires that the misrepresentation was meant by the party uttering it to have been acted upon by the plaintiff. To successfully bring a claim for fraud, the plaintiff must also prove that he or she justifiably relied upon the misrepresentation to his or her detriment. The fraudulent misrepresentation must not only be capable of causing damage, but it must also have caused the damage claimed.

(Doc. No. 151). As noted by counselor Turnquest, Bahamian law is similar to Florida law with respect to this issue, save for the fact that, under Bahamian law, punitive damages are not generally available as a remedy for fraud. *Id. See Bradley Factor, Inc. v. United States,* 86 F.Supp.2d 1140,

-12-

1146 (M.D. Fla. 2000) ("It is well-settled in Florida that fraud in the inducement requires proof of: (1) a false statement of a material fact; (2) that the defendant knew or should have known was false; (3) that was made to induce the plaintiff to enter into a contract; and (4) that proximately caused injury to the plaintiff when acting in reliance on the misrepresentation.") (internal citation omitted). As the issue of punitive damages is not presently before the Court, and the laws are strikingly similar, for present purposes, either law will do.

*The merits*

As alleged by Plaintiffs, the fraudulent inducement claim is based on the following June 7, 2003 representations made by Nygard, apparently on behalf of Holdings:

1.  "Nygard stated that permits would be provided by the employer and that Nygard had "a blanket permit."

2.  "Nygard said that it had been his dream to own a "high-end resort," that he was in the process of converting the property to a resort which could be leased to the public, and that he had applied for a commercial license."

3.  "Nygard stated that he treated his employees well, as if they were his children."

4.  "In describing current functions at the property, Nygard spoke of banquets, fashion shows, parties, and other special events typical of a first-class resort."

5.  "When asked why the former resort managers left, Nygard stated they were perfectionists and, as a result, were unhappy because they couldn't get the resort to their standards."

Affidavit of Michelle May, attached to Doc. No. 151.

For purposes of summary judgment, the Court assumes that Nygard did, indeed, make all of these statements.  Nonetheless, these statements do not constitute actionable fraud on this record.

-13-

*1. Work permits*

Plaintiffs have characterized this issue as forming the basis of its breach of contract claim, *supra,* and, as such, the claim is barred by the economic loss rule, as it does not purport to state a *separate* wrong.  Even if the claim were not barred, Defendants would still be entitled to summary judgment as the Plaintiffs cannot prove the alleged falsity of the statement or that they reasonably relied on the statement, with resulting damage *to Plaintiffs*.

The representation contains two parts: that Holdings would provide the work permits and that Holdings had a blanket permit.  A prediction of future events cannot be the basis for fraud, because it is not a representation that is false when made. *See Cavic v. Grand Bahama Dev. Co., Ltd.,* 701 F. 2d 879, 883 (11th Cir. 1983).  An exception exists if Plaintiff can show that the promise was made either without the intention to perform or with the intention *not* to perform. *Palmer v. Santa Fe Healthcare Systems, Inc.,* 582 So.2d 1234 (Fla. 1st DCA 1991). Here, absent a specific reference as to *when* work permits were to be provided, there can be no claim of fraud for failure to perform an event at some unspecified time in the future, absent proof that at the time of making the representation, Nygard never intended to perform.  While there may be evidence that Nygard and Holdings were less than diligent when it came to timely obtaining work permits for some other employees, this fact alone is insufficient to support a finding of a preexisting intention not to ever obtain a work permit for Plaintiffs.

As for the blanket permit remark, the Court finds that Plaintiffs have not shown that the remark, vague as it is, was intentionally false at the time it was made and that damage resulted. Initially, the remark is unspecific as to exactly what a blanket permit is supposed to cover.  The Court construes the evidence in Plaintiffs' favor to infer that Defendants were representing that Plaintiffs

-14-

were covered initially by a permit issued to the Resort for all new employees, pending the issuance

of an individual permit.[12]   According to the unrebutted Affidavit of Frank Watson, former Deputy

Prime Minister for the Commonwealth, Nygard had been given such a blanket accommodation in the

past (Doc. No. 151, attachment).  While the evidence as a whole shows that Plaintiffs' names were,

indeed, not submitted to Bahamian officials pursuant to any such permit, that is not the standard for

fraud.  Plaintiffs must show that the statement was *knowingly* false when made– that is, that at the

time Nygard said that he had a blanket permit, he in fact did not, and he knew that he did not.  This

issue is disputed.[13]

        The existence of a disputed issue of material fact regarding this element does not save

Plaintiffs' claim from summary judgment, however, because Plaintiffs have failed to establish the

final prong – resulting injury. As discussed above, Plaintiffs presented no evidence of any injury

resulting from the misrepresentation.  They were not arrested or fined.  They were not fired or

otherwise penalized and they point to no injury, economic or otherwise, suffered as a result of the lack

of a blanket permit.  As such, their claim cannot stand.[14]

---

[12]The Court bases this conclusion of Plaintiffs' representation that they were told both that Holdings had a blanket permit and that Holdings would obtain a permit for each Plaintiff, as well.  If a blanket permit served as  permanent permission for all, there would be no need to obtain a separate permit for each individual.

[13]Nygard testified in his deposition that under the prior administration, he had a "standing order" from the Bahamian government with respect to new employees and work permits.  *See* Nygard Deposition at 99-107.

[14]At best, Plaintiffs' claim is akin to a whistleblower's claim in that Plaintiffs' assert a scheme to "deceive" Bahamian officials.  While Defendants' conduct may well be illegal under Bahamian law, Plaintiffs have not purported to state a qui tam action on behalf of the Bahamian government (and, indeed, this Court would likely have no jurisdiction over such  an action, even if one exists under Bahamian law.)  Rather, the only injuries relevant here are injuries Plaintiffs can show *they* suffered, that flowed from Defendants' wrongful conduct.  Plaintiffs have no standing to assert damages to the Commonwealth.

*2. A "high end resort" with commercial license*

Plaintiffs contend that Nygard's representations regarding his plans for the property were not true. These comments, however, are not actionable in that they are comments regarding future events. Moreover, there is no proof as to their falsity.  Nygard spoke of his "dream" and that he was "in the process of converting the property."  The fact that the property had not yet been converted in the scant tenure of Plaintiffs' employment is not proof of intentional false statement.  Moreover, no damages are shown to flow from any alleged misrepresentation regarding the conversion of the property, or the lack of a commercial license.

*3. Treating employees well*

Plaintiffs allege fraud in that they assert this statement is at odds with a wide variety of alleged unfair labor practices they observed with respect to *other* employees at the Resort.  Again, however, this representation is not actionable as fraud.  At best, the statement is a statement of opinion or puffery.  Moreover, Plaintiffs do not contend that *they* suffered injuries either from the alleged unfair practices or otherwise, resulting from relying on this statement.

*4. First class resort*

Plaintiffs assert that the events they were required to assist with were objectionable "pamper parties," involving the recruitment of "models." According to Plaintiffs, these activities were inconsistent with the representations that this was a first class resort.  As above, however, the crux of fraudulent misrepresentation is the representation itself.  Here, this statement is not actionable as it is a statement of opinion and puffery.  Moreover, Plaintiffs claim no damages resulting from the misrepresentation.

-16-

*5. Reasons the prior managers left*

The statement that the prior managers were perfectionists and could not get the Resort to meet their standards is not actionable as the statement is a matter of opinion.  Plaintiffs contend that had they been told the real reason the prior managers had left (because the Resort was not what had been represented, because of the stress of the job and because they had never received work permits), they would not have entered into the contracts.[15]  The Court finds no intentional false statement regarding the past managers.[16]

Although various labor practices and employment conditions have been alleged at great length by Plaintiffs, this is not a suit for unfair labor practices under the Fair Labor Standards Act; nor is it a qui tam action, nor a Title VII or similar action for employment discrimination.  At the end of the day, the voluminous record makes one thing clear: after less than two months, Plaintiffs decided to end their employment, as provided for in their contracts, because the employment they envisioned was not the employment they were experiencing.  Absent a *specific, material* misrepresentation of *fact*, that state of affairs does not equal fraud.  As a matter of law, Count III fails.  All Defendants are entitled to summary judgment on this Count.

**Declaratory Judgment (Count IV)**

Plaintiffs last count is a cause of action for Declaratory Judgment, seeking a declaration that the confidentiality provisions of the employment contracts are not enforceable.  Although the Court

---

[15]The Court finds it far more likely that if the Mays had represented their background factually on their resumes, they would not have been offered the contracts.

[16]Indeed, the existence of other additional reasons for the departure of the managers does not make the reasons offered – the failure of the resort to meet their standards– false.  The Court finds it likely that the prior managers would agree that they were, in fact, "unhappy because they could not get the resort to their standards." (Doc. No. 170 at 11).

assumes that the claim is brought under state law, under both state and federal law, a court is within its discretion to dismiss a declaratory judgment action, if the matters presented are pending before another court.  *See  Ven-Fuel, Inc. v. Department of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) ("In its discretion, a district court may decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties"); *School Bd. of Leon County v. Mitchell,* 346 So.2d 562, 564 (Fla. 1st DCA 1977) ("[N]or will a court ordinarily entertain an action for declaratory judgment when a proceeding is already pending between the same parties involving the same issues"), citing *Taylor v. Cooper*, 60 So.2d 534 (Fla. 1952).  *See also Edgar v. Cape Coral Medical Center, Inc*., 664 So.2d 1068 (Fla. 2nd DCA 1995) (trial court did not err in dismissing former employees' claim seeking declaratory judgment that they were owners of life insurance policies which employer purchased for them and their claim seeking specific performance since these causes of action would be resolved in parties' federal court case or in interpleader action).

Here, the matters sought to be adjudicated – the validity and enforceability *vel non* of the confidentiality provisions – are presently pending before the Bahamian court.  As the contracts provide that Bahamian law controls, and the matter was first filed in the Bahamas, the Court dismisses this Count, without prejudice to resolution in the appropriate Bahamian forum.

### CONCLUSION

Plaintiffs motion for summary judgment is **granted, in part, and denied, in part,** and Defendant's motion is **granted, in part, and denied, in part,** as set forth above.  Plaintiffs have shown that there is no genuine issue of material fact with respect to their unpaid wages claims and Plaintiffs are entitled to an award of damages in the total amount of $929.00 each against the admitted

employer, Nygard Holdings Limited.  The issue of other parties' liability on the contract remains for resolution.  In all other respects, Plaintiffs motion for summary judgment is denied, and Defendants' motion is granted.

A final word is in order.  While Plaintiffs are no doubt disappointed that their employment did not meet their expectations, and Defendants feel that they have been unjustifiably maligned, this hardly warrants the enormous expenditure of time and effort spent by the parties, litigating this matter before two courts in two countries.  The net result of their efforts is that the public record now contains evidence in which Plaintiffs admit to resume fraud and Defendants stand accused of racism, unseemly sexual practices, and immigration fraud.  This cannot be what any party intended.  The parties (and counsel) would do well to remember that not every dispute is worth litigation and not every perceived injustice is, in fact, unjust.

The Court will confer with counsel at the Final Pretrial Conference regarding any remaining issues, including allowance of interest, the contract claim against the Partnership, costs and the form of judgment to be entered.

**DONE** and **ORDERED** in Orlando, Florida on September 21, 2005.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-19-